IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,
Plaintiff,

v.  Civil Action No. 1:10cv00071

KRISTIAN E. WARNER,
ANDREW WARNER,
MONROE P. WARNER,
Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DECLARATORY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

### I.
### General Background

Plaintiff, Old Republic National Title Insurance Company [Old Republic] filed its complaint against Defendants, Kristian E. Warner, Andrew Warner, and Monroe P. Warner [Warner Defendants] on April 30, 2010 [DE 3]. Old Republic claimed the Warner Defendants guaranteed the obligations of Augusta Apartments, LLC [Augusta Apartments] to indemnify Old Republic for any loss or damage, including attorneys fees, it might sustain from any mechanic's lien claims arising from a specified construction project. Old Republic claimed the guarantee was a condition it required and was an inducement for its issuance of a title insurance policy without the standard exception for mechanic's liens incident to the closing of a $20,648,000 construction loan to Augusta Apartments. Old Republic further alleges after the loan was made and the title insurance issued without the standard lien waiver, Landau Building Company [Landau] filed a mechanics lien for work allegedly performed on the Augusta Apartment project and commenced prior to the loan closing. Landau filed suit in state court to perfect its mechanics lien priority over PNC's deed of trust lien. Old Republic claims PNC called upon it to defend its lien position in the Landau state

court action. It further claims that through April 9, 2010 it [Old Republic] had spent $114,325.94 in attorneys fees and costs in that state court litigation.

Old Republic seeks declaratory judgment under 28 U.S.C. §2201 and FRCivP 57 declaring the indemnity agreement to be valid and enforceable as between it and Warner Defendants. It also seeks judgment against the Warner Defendants for $114,325.94 under alternate claims of breach of contract and unjust enrichment as well as prospective damages.

Warner Defendants filed a timely answer with affirmative defenses to the complaint on February 3, 2011 [DE 24] after the Court denied their 12(b) motion to dismiss for lack of jurisdiction [DE 21][DE 22]. In their answer, the Warner Defendants admit: they signed and are parties to the agreement attached as Exhibit A to Plaintiff's complaint; that the agreement provides that Augusta "hereby indemnifies and agrees to hold [Old Republic] harmless from all liability, loss or damage of any nature, including attorney's fees and expenses incurred in enforcing this agreement, which [Old Republic] may sustain resulting from the issuance, either now or in the future, of policies against loss that may result from the Exception"; the "Exception under the Agreement is defined as ... 'Any lien, or right to a lien, for services, labor or material heretofore or hereafter rendered or furnished, imposed by law and not shown by the public records.'" The agreement states they [Defendants], "as individual Guarantors, being the principals of Augusta Apartments, LLC, jointly and severally, unconditionally guarantee to [Old Republic] the performance of every duty or obligation assumed by or imposed upon [Augusta Apartments] by this agreement." Warner Defendants admit that Augusta entered into a construction contract with Landau; that Landau filed a mechanics lien against the project; and that Landau filed a state court action against Augusta and National City Bank. Warner Defendants deny that PNC was a party to the state court action; that

PNC filed a claim on the title policy against Old Republic or that Old Republic provided a defense to PNC in the Landau litigation; and that Old Republic spent $114,325.94 to defend the Landau litigation. Essentially, Warner Defendants do not recognize PNC as the alter ego of National City and that the rights of National City under the agreement are now the rights of PNC. Warner Defendants also assert as affirmative defenses that: Old Republic's claims are barred 1) as premature and unripe; 2) by Old Republic's failure to perform all conditions precedent to asserting a claim against Defendants such as failing to assert a claim under the title insurance policy against Augusta Apartments (which is in bankruptcy); 3) failure to join a necessary party to the litigation; 4) failure to aver that it has paid the claim on which it now seeks indemnification; 5) its negligent defense of the Landau litigation; 6) its negligence in the loan closing; 7) its failure to disclose that the attorney working as its title agent was Warner Defendants' attorney and therefore in conflict of interest; and 8) the failures of National City Bank at loan closing and in the preparation and review of documents for the loan closing.

By Order dated April 6, 2011 [DE 38] the Court Granted PNC's motion to strike the Warner Defendants Third-Party Complaint [DE 26].

On April 13, 2011 the parties submitted and the Court approved their Joint Proposed Integrated Pretrial Order [DE 44].

Pursuant to the Scheduling Order dated September 15, 2010 [DE 15] the case was set for trial on May 12, 2011. April 29, 2011 the parties appeared by counsel telephonically for the final pre-trial conference. During the same the Court inquired as to what issues of material fact were to be tried given the Court's prior ruling on the Third-Party Complaint and the representations made in the Joint Proposed Integrated Pretrial Order. The Court advised that on review of the Joint Proposed

Integrated Pretrial Order, the issues remaining appeared to be matters of law as opposed to fact. During the ensuing record discussion, the Warner Defendants' asserted that it appeared to them the Court had already decided to grant summary judgment when no summary judgment motion had been filed and that it might as well dispense with the scheduled jury trial. In response, the Court suggested it may *sua sponte* consider granting summary judgment notwithstanding the fact that no party had filed a motion for summary judgment.

By Order dated May 6, 2011 the Court, pursuant to FRCivP 56(f): "After giving notice and a reasonable time to respond the court may: (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute" continued the trial of the case then scheduled for May 12 and 13, 2011, announced it was considering summary judgment on a declared set of material facts it believed were not genuinely in dispute[1] and provided Warner

---

1

a) December 13, 2006 the Warner Defendants as Guarantors signed a Hold Harmless and Escrow Agreement between Augusta Apartments, LLC, a West Virginia limited liability company, Indemnitor, and Old Republic National Title Insurance Company, attached to the complaint filed in this action as Exhibit 1;

b) In order to induce Old Republic to issue a title policy insuring certain specifically described interests in real estate against loss from "[a]ny lien, or right to a lien, for services, labor or material heretofore or hereafter rendered or furnished, imposed by law and not shown by the public records" [the exception] Augusta indemnified and agreed to hold Old Republic "harmless from all liability, loss or damage of any nature, including attorneys' fees and expenses incurred in enforcing this agreement, which [Old Republic] may sustain resulting from the issuance, either now or in the future of policies of title insurance which indemnify the named insureds in the policies against loss that may result from the Exception."

c) The Warner Defendants, "being principals of Augusta Apartments, LLC, jointly and severally, unconditionally guarantee[d] to [Old Republic] the performance of every duty or obligation assumed by or imposed upon [Augusta] by [the] agreement."

d) The Warner Defendants acknowledged their personal guaranty was "an essential element of the consideration inducing [Old Republic] to provide the title insurance referenced" in the Agreement.

e) The Agreement provides: "7. If Indemnitor [Augusta] fails to take such steps as in opinion of Company [Old Republic] are necessary to remove the matters set forth herein as an

Defendants and Plaintiff the opportunity to file memoranda and the opportunity to be heard on June 20, 2011 relative to the Court's proposed grant of summary judgment.

---

Exception to the title to the real estate on or before the agreed date as provided herein, Company [Old Republic] is authorized in its own discretion to take whatever steps, including but not limited to the commencement of legal action or payment of money, that it determines necessary to remove said matters, and Indemnitor [Augusta] shall reimburse Company [Old Republic] for all costs and charges, including attorneys' fees, incurred by Company [Old Republic] in causing the Exception to be removed, and all costs, charges and attorneys fees incurred in enforcing this agreement."

f) By letter dated December 13, 2006 George B. Armistead acknowledged he acted as counsel for Augusta Apartments, LLC and the Warner Defendants in examining specified documents but the acknowledgment did not list or include the Hold Harmless and Escrow Agreement at issue in this action.

g) Old Republic issued a title insurance policy on the subject real estate signed by its authorized agent, George B. Armistead.

h) Augusta entered into a construction contract with Landua to construct improvements on property including those secured in the deed of trust.

i) Landau sued Augusta and National City Bank in Monongalia County West Virginia Circuit Court claiming its mechanics lien held a higher priority than the deed of trust securing the bank for its $20,648,000.00 loan.

j) PNC Bank is the successor in interest to National City Bank. [DE 44, VI. Stipulations, 2].

k) April 9, 2010 Old Republic by counsel notified the Warner Defendants that Old Republic had incurred defense costs to the date of the letter in the amount of $114,325.94 defending its insured's [PNC] interest in litigation started by Landau Building Company claiming a mechanic's lien with priority higher than the insured's deed of trust and demanded payment of the same not later than 5:00 p.m. April 20, 2010.

l) Augusta is in bankruptcy and did not pay Old Republic the $114,325.94 demanded by April 20, 2010 or at any time since.

m) The Warner Defendants did not pay Old Republic the $114,325.94 demanded by April 20, 2010 or at any time since.

n) PNC, nor its predecessor National City Bank, is a party to the Hold Harmless and Escrow Agreement.

o) The Warner Defendants have not disclosed any expert witness to testify that the amount claimed by Old Republic, to wit: $114,325.94 a) is unreasonable; b) was not necessarily incurred in defending the interests of its insured in the mechanics lien litigation pending in state court; or is not owed by the Warner Defendants under the terms and provisions of the Hold Harmless and Escrow Agreement.

p) No final judgment exists in the case pending before the Circuit Court of Monongalia County, West Virginia because, although the decision of the trial court has been made, that decision is pending appeal to the West Virginia Supreme Court of Appeals.

Warner Defendants timely filed their Memorandum in Opposition to Summary Judgment on May 11, 2011 [DE 47] and the affidavit of Kristian E. Warner in support [DE 48]. Old Republic filed its Reply with supporting affidavit of Leroy Owens [DE 49, Ex. 1, 2, 3, 4, and 5].

On June 20, 2011 came the Warner Defendants by their counsel. The counsel for Old Republic failed to appear.

## II.
## Contentions of the Parties

### 1. Defendants' Memorandum of Law in Opposition to Summary Judgment

The defendants' memorandum claims can be summarized in three issues they allege are subject to factual dispute and deserve a jury trial:[2]

(1) the indemnity agreement in the contract is ambiguous, and it was not the intent of the defendants to indemnify all liens on the property after the closing date;

(2) the defendants' are free from liability due to the intervening and superceding negligence the defendants' attorney and the closing attorney for PNC bank; and

(3) the reasonableness of the attorney fees.

The memorandum contains an affidavit from Kristian E. Warner, stating that it was never the defendants' intention to indemnify the plaintiff's past the closing date. It further states that the defendants relied exclusively on the statements and representations from their attorney and the closing attorney from PNC bank.

### 2. Plaintiff's Reply to Defendants' Memorandum

---

[2] The defendants' also allege that there are contested issues of fact as to "whether [plaintiff] would have issued the title policy without the standard mechanics lien exception, and the extent to which Old Republic continues to be liable to defend PNC Bank in related title litigation and whether the [defendants] had been unjustly enriched." However, these issues are rendered moot in the Court's holding on the three main issues and are therefore not discussed at length in this opinion.

In the plaintiff's reply, they allege that the indemnity clause is not ambiguous because the language is clear and the defendants' are sophisticated business individuals with vast experience in real estate matters. The plaintiff further alleges that the defendants have disclosed no evidence or expert witness regarding the attorney fees, and thus there is no issue of material fact regarding whether or not these fees are reasonable. The plaintiff also claims that the plaintiff has sustained more legal fees since the complaint, and requests for the Court to consider that fact in the decision. Finally, the plaintiff claims that the defendants failed to make a demand for a jury trial in any of the documents regarding this action, and thus the defendants' right to a jury trial has been waived.

In support of the plaintiff's reply, the plaintiff includes documentation showing the business and political credentials of the defendants and the state court complaint for the litigation regarding the lien disputes from the Circuit Court of Monongalia County. The plaintiff also includes an affidavit of Leroy Owens that details the attorney costs that have accrued since the original complaint, including $207,874.41 to Jackson Kelly PLLC, $26,291.48 to Dinsmore & Shohl, LLP, and $45,654.36 to Strassburger, McKenna Gutnick & Gefsky.

## III.
## Standard of Review

According to Fed.R.Civ.P. 56(f): "After giving notice and a reasonable time to respond the court may: (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Furthermore, "District Courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Id.* at 322-23. The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.
## Analysis

1. **Factual Findings Not in Dispute**

    The Court finds the following facts undisputed:

a) December 13, 2006 the Warner Defendants as Guarantors signed a Hold Harmless and Escrow Agreement between Augusta Apartments, LLC, a West Virginia limited liability company, Indemnitor, and Old Republic National Title Insurance Company, attached to the complaint filed in this action as Exhibit 1;

b) In order to induce Old Republic to issue a title policy insuring certain specifically described interests in real estate against loss from "[a]ny lien, or right to a lien, for services, labor or material heretofore or hereafter rendered or furnished, imposed by law and not shown by the

public records" [the exception] Augusta indemnified and agreed to hold Old Republic "harmless from all liability, loss or damage of any nature, including attorneys' fees and expenses incurred in enforcing this agreement, which [Old Republic] may sustain resulting from the issuance, either now or in the future of policies of title insurance which indemnify the named insureds in the policies against loss that may result from the Exception."

c) The Warner Defendants, "being principals of Augusta Apartments, LLC, jointly and severally, unconditionally guarantee[d] to [Old Republic] the performance of every duty or obligation assumed by or imposed upon [Augusta] by [the] agreement."

d) The Warner Defendants acknowledged their personal guaranty was "an essential element of the consideration inducing [Old Republic] to provide the title insurance referenced" in the Agreement.

e) The Agreement provides: "7. If Indemnitor [Augusta] fails to take such steps as in opinion of Company [Old Republic] are necessary to remove the matters set forth herein as an Exception to the title to the real estate on or before the agreed date as provided herein, Company [Old Republic] is authorized in its own discretion to take whatever steps, including but not limited to the commencement of legal action or payment of money, that it determines necessary to remove said matters, and Indemnitor [Augusta] shall reimburse Company [Old Republic] for all costs and charges, including attorneys' fees, incurred by Company [Old Republic] in causing the Exception to be removed, and all costs, charges and attorneys fees incurred in enforcing this agreement."

f) By letter dated December 13, 2006 George B. Armistead acknowledged he acted as counsel for Augusta Apartments, LLC and the Warner Defendants in examining specified documents

but the acknowledgment did not list or include the Hold Harmless and Escrow Agreement at issue in this action.

g) Old Republic issued a title insurance policy on the subject real estate signed by its authorized agent, George B. Armistead.

h) Augusta entered into a construction contract with Landua to construct improvements on property including those secured in the deed of trust to National City Bank.

i) Landau sued Augusta and National City Bank in Monongalia County, West Virginia Circuit Court claiming its mechanics lien held a higher priority than the deed of trust securing the National City Bank for its $20,648,000.00 loan.

j) PNC Bank is the successor in interest to National City Bank. [DE 44, VI. Stipulations, 2].

k) April 9, 2010 Old Republic by counsel notified the Warner Defendants that Old Republic had incurred defense costs to the date of the letter in the amount of $114,325.94 defending its insured's [PNC] interest in litigation started by Landau Building Company claiming a mechanic's lien with priority higher than the insured's deed of trust and demanded payment of the same not later than 5:00 p.m. April 20, 2010.

l) Augusta is in bankruptcy and did not pay Old Republic the $114,325.94 demanded by April 20, 2010 or at any time since.

m) The Warner Defendants did not pay Old Republic the $114,325.94 demanded by April 20, 2010 or at any time since.

n) PNC, nor its predecessor National City Bank, is a party to the Hold Harmless and Escrow Agreement.

o) No final judgment exists in the case pending before the Circuit Court of Monongalia County,

West Virginia because, although the decision of the trial court has been made, it is pending appeal to the West Virginia Supreme Court of Appeals.

p) Plaintiffs sought fees and expenses incurred post $114,325.94, including fees and expenses for this declaratory judgment action, but did not submit a demand for payment of same or an itemization of the same.

## 2. Ambiguity of the Indemnity Agreement

The defendant's allege that the indemnity agreement between the two parties is open to two different interpretations, and therefore the intent of the parties should govern. The defendants claim that because it was never their intent to indemnify the plaintiff past the closing date, they are under no duty to compensate the plaintiff for the attorney fees. The plaintiff's state that the language of the agreement is in no way ambiguous and that the defendants are sophisticated businessmen with a long history in real estate, and thus there is no way they could have misunderstood the terms of the agreement.

As a general rule, "[u]nder West Virginia law, it is the province of the court, and not of the jury, to interpret a written contract. West Virginia courts are to determine whether contracts are ambiguous as a matter of law. Under West Virginia law, valid written agreements using plain and unambiguous language are to be enforced according to their plain intent and should not be construed." Charter Communications VI, LLC v. Eleazer, et al, 412 F. Supp.2d 588, 591 (S.D.W.Va. 2006). Therefore, the ambiguity of the indemnity clause in this case is not for the jury to decide, but rather for this Court. Only if this Court finds the contract ambiguous does the intent of the parties play a role in the interpretation of the contract. "[I]t is not the right or province of the court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in the

unambiguous language contract." *Id.*

To determine if a contract is ambiguous, the court looks to the language of the contract to see whether it is "'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree to its meaning.'" Payne v. Weston, 466 S.E.2d 161, 166 (W.Va. 1995)(quoting Shamblin v. Nationwide, 332 S.E.2d 639 (W.Va. 1985)). Further, "the mere fact that parties do not agree to the construction of the contract does not render it ambiguous." Berkeley County Public Service District v. Vitro Corporation of America, 162 S.E.2d 189, 200 (W.Va. 1968).

The defendants contend that the language of the indemnity agreement in the contract is subject to two different interpretations. They claim that the indemnity agreement could be read to mean that the contract was only intended to facilitate the closing property. They also claim it only required the defendants to pay off any liens that may have interfered with the closing and was never intended to extend to debts and claims of liens filed long after the closing. However, these interpretations are in direct conflict with the plain, unambiguous language of the contract. The indemnity agreement contains an exception, where it states "any lien, or right to a lien, for services, labor, or material *heretofore or hereafter rendered and furnished*, imposed by law and not shown by the public records."[DE 3 Ex. A] (emphasis added). This language clearly shows the exception was to cover any lien or claim of lien not of record as of the closing but filed post closing that is for work performed prior to closing and continued after closing which could be filed in accord with law.

Moreover, the second page of the indemnity agreement states:

"indeminotor, jointly and severally, as applicable, hereby indemnifies and agrees to hold company harmless from all liability, loss, or damage of any nature, including attorneys' fees and expenses incurred in enforcing this agreement, which [plaintiff] *may sustain resulting from the issuance, either now or in the future, of policies of*

*title insurance* which indemnify the named insureds in the policies against loss that may result from the Exception."
[DE 3, Ex. A] (Emphasis added).

This language clearly and unambiguously shows the intent was that the indemnity extend to the policy issued incident to closing and any future policy indemnifying the insured against loss resulting from the exception.

Moreover, a plain reading of the entirety of the indemnity agreement clearly expresses that the defendants agreed to indemnify the plaintiff for any and all expenses incurred in enforcing the agreement, including those beyond the date of closing. Accordingly, defendants' claim that the indemnity agreement is ambiguous is plainly wrong. The fact that the defendants now claim they never intended to indemnify the plaintiff for the expenses incurred is contradicted by the language of the agreement.

### 3. Whether Third-Party Negligence Relieves Defendants from Duty to Pay

The defendants allege that the intervening and superceding negligence of PNC bank's closing attorney and the defendants own local counsel by not including a no-liens agreement and not inspecting property is a legal excuse to release them from the duties under the indemnity agreement. The plaintiff's do not directly address this issue in their reply.

Under West Virginia law, "an express indemnity agreement can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at fault. Such result is allowed because *express indemnity agreements are based on contract principles. Courts have traditionally enforced indemnity contract rights so long as they are not unlawful.*" Sydenstricker v. Unipunch Products, Inc v. Terrell Tool and Die Corp., 288 S.E.2d 511, 515 (W.Va. 1982)(emphasis added). Further, a valid contract for performance "casts upon him a duty, from the

13

discharge of which he cannot excuse himself by reason of the lawful conduct or interference of a stranger to the undertaking."Bunch v. Potter, 17 S.E.2d 438, 440 (W.Va. 1941). Basically, these cases indicate that the negligence or interference of a stranger to the lawful contract does not excuse a party from an obligation to perform.

Applying this to the instant case, both the defendants' attorney and the closing attorney for PNC bank are strangers to the contract. Their negligence does not excuse the defendants of their duty to perform their obligations under the indemnity agreement. There is nothing in the evidence that indicates that the plaintiff in this case directed the attorneys or the parties to the loan closing as how the loan should be closed. This Court has struck down the third party complaint that tried to make this same argument. Without the negligence of the plaintiff in this case being the cause of the legal fees incurred, the defendants assertion that they are excused from performance must fail. Therefore, summary judgment for the plaintiff on this issue is hereby **GRANTED**.

4. **Reasonableness of Attorney's Fees**

The defendants claim that the reasonableness of the attorneys' fees incurred is a factual issue for the jury to decide. The plaintiffs assert that the defendants failed to disclose any expert witnesses to attest to the reasonableness of the fees, and thus there is no material issue of fact. The plaintiff further alleges that it has accumulated even more attorneys' fees since its original complaint.

Although the indemnity agreement fails to include the word "reasonable" when referencing attorney fees, Rule 1.5(1)(a) of the West Virginia Rules of Professional Conduct indicates that "[a] lawyer's fee shall be reasonable." In analyzing the reasonableness of a fee, the Rule 1.5(a)(1-8) outlines eight factors that should be considered. However, case law suggests there are twelve recognized reasonableness factors:

14

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained
(9) the experience, reputation, and ability of the attorneys
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases
In re John T., 695 S.E.2d 868, 875 (W.Va. 2010), *see also* Aetna Casualty & Insurity Co. V. Pitrolo, 342 S.E.2d 156 (W.Va 1986)

In addition, case law states that parties contesting attorney's fees must have an opportunity to present their case on whether or not they are reasonable. In re. John T., 695 S.E.2d at 874. Although the court in its majority holding did not provide much guidance on what exactly qualifies as an opportunity (I.E. whether or not it should be an issue for a jury or a judge), a concurring opinion provides some examples, stating that when there is a well-developed record in the case a long trial regarding attorneys' fees may be unreasonable, but in cases where the record still needs to be developed a more extensive trial may be proper. *Id.* at 878-879. Moreover, the Fourth Circuit held in an unpublished opinion that the reasonableness of attorney fees is a factual issue for a jury to determine. Lafarge Corporation v. National Union Fire Insurance Company, 121 F.3d 699 (4th Circuit 1997)

Based on these cases, a jury trial on the issue of the attorney fees is necessary in this case. The record regarding the attorney fees may require further development. A jury trial will provide the defense with an opportunity to challenge the reasonableness of all fees, and also provide the plaintiff with a forum to put forth evidence regarding the new costs it has incurred since the filing of its complaint. Thus, summary judgment on the issue of attorney fees is **DENIED**, and this issue

will go to jury trial.

## V.
## Conclusion

For the reasons stated, the Court hereby finds and declares pursuant to 28 USC §2201:

(1) the indemnity clause is not ambiguous, and therefore summary judgment for the plaintiff is **GRANTED** on that issue;

(2) the negligence of the defendants' attorney and the closing attorney of PNC bank does not relieve the defendants of their duties under the indemnity clause, and therefore summary judgment for the plaintiff is **GRANTED** on that issue;

(3) the reasonable amount of attorney's fees to be paid is an issue for the jury, and thus summary judgment is **DENIED** on that issue and this issue will go to trial.

The parties shall have **SIX (6) WEEKS** from the date of this opinion (August 23, 2011) within which to complete discovery on the attorneys fees issues. Within **THREE (3) WEEKS** from the date of this opinion (August 2, 2011), where both sides must disclose the expert witnesses they intend to use, if any, and include full opinions. The trial will be set for **TWELVE (12) WEEKS** from the date of this opinion (October 4, 2011) with jury selection commencing at 9:00 a.m in the main courtroom at a point of holding court yet to be announced. The final pre-trial conference will be conducted at the 3rd floor hearing room at the Clarksburg WV point of holding court on Friday, September 30, 2011 at 10:00 a.m. Counsel are required to be present. Plaintiff's will have **ONE (1) WEEK** from the date of this opinion (July 19, 2011) to produce its itemized claims for legal fees incurred after the $114,325,94 originally sought, including any and all claims for legal fees that have resulted from the declaratory action before this Court.

The Clerk is directed to provide copies of this Order to all counsel of record.

It is so **ORDERED.**

Dated: July 11, 2011

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE